ALFRED E. SHERMAN, Administrator, *vs.* MARY BAKER *et al.*

PROVIDENCE—APRIL 5. 1898.

PRESENT: Stiness and Tillinghast, JJ.

A charitable trust may be in perpetuity, but a private trust cannot be; the distinction being not the legality of the purpose of the gift but the creation of a perpetuity.

Certain clauses of a will gave a parish priest one hundred dollars to say masses for the testator and also a like sum the income of which was to be used in ornamenting and keeping in repair the testator's burial lot:—

*Held*, that bequests for masses are legal, and that the first gift, taking effect at once, was valid, being like any personal bequest for a legal object.

*Held*, further, that the second gift, being in perpetuity for a private trust, was invalid.

*Held*, further, that the legatee designated was intended to be the parish priest in office when the will should take effect.

If a gift is a charitable trust it will be good, whenever it is to be executed; if not a charitable trust it will be good if it has the proper elements of a trust and is to be executed within the limit allowed by law, or if it be an outright gift for a specified legal object.

Other clauses of the same will provided for the payment of certain expenses and the conversion into money of all the residue of the testator's estate, giving the income of one-third of all his " estate " to his widow for life, and two-thirds of said " residue " to children of K. and M.:—

*Held*, that the terms " residue " and " estate," as so used, meant the same thing.

*Held*, further, that the gifts to the children, although postponed in payment until the determination of the life estate, took effect at the death of the testator.

The widow declined the above provisions of the will, made in lieu of her dower, and a part of the real estate was set off to her:—

*Held*, that, although the will did not contemplate a division of the estate until the death of the widow, her claim of dower had so changed the conditions that the executor might pay the legacies as far as he could before the sale of the realty assigned to her for dower.

*Held*, further, that the election of the widow to take dower effaced the life estate provided for her by the will, and so advanced the interests in remainder.

BILL IN EQUITY for the construction of a will.

STINESS, J. This is a bill for the construction of the will of John Baker. After providing for his burial and the erection of a monument, the testator at once goes on to say that all the residue of his estate, real and personal, shall be converted into money and disposed of according to the remain-

ing clauses of the will. The tenth and eleventh clauses give
to the parish priest of St. Patrick's Church, Valley Falls, one
hundred dollars "to say masses for me," and one hundred
dollars "the income of which to be used in ornamenting and
keeping in proper repair my burial lot in said St. Patrick's
Cemetery."

The strife of the time of the Reformation naturally found
vent in statutes. Among them was that of 1 Edw. VI, c. 14,
for vesting in the crown property devoted to "superstition
and errors in Christian religion," which specified "vain opin-
ions of purgatory and masses satisfactory, to be done for them
which were departed." From this came the English doctrine
of superstitious uses, and even now, after the statute of 2 &
3 Wm. IV, c. 115, which legalizes bequests for the support
of the Roman Catholic religion, a legacy to priests and
chapels for the benefit of their prayers and masses is held to
be void on account of the superstitious purpose attached to
them. *West* v. *Shuttleworth*, 2 My. & K. 684 ; *Heath* v.
*Chapman*, 2 Drewry, 417 ; *Re Blundell's Trusts*, 30 Beav.
360.

In this country, where all forms of religious belief stand
upon equal legal rights, the doctrine of superstitious uses
has never been recognized and bequests for masses are now
generally admitted to be legal, but there is a diversity of
opinion as to their execution. One class of cases holds that
they are good as charitable trusts, being for religious ser-
vices. Another class holds that they are private trusts,
which are void because there is no living beneficiary to en-
force the trust. A third class holds that they are good as
outright gifts for a specified legal object.

Of the first class is *Schouler, Pet'r*, 134 Mass. 426, in which
the court says : "Masses are religious ceremonials or observ-
ances of the church, of which she (the testatrix) was a mem-
ber, and come within the religious or pious uses which are
upheld as public charities." In *Rhymer's Ap.*, 93 Pa. St.
142, it was held that a gift for masses was a gift to a relig-
ious use, and so void under a statute declaring that no gift
in trust for charitable or religious uses should be made, ex-

cept it should be done at least one month before the testator's death.    The opinion says that the mass is a prominent part of the religious service of the Catholic church, and that the service is the same in kind, whether it be designed to promote the spiritual welfare of one or many.    See also *Seibert's Ap.*, 18 W. N. C. 276 ; *Seda* v. *Huble*, 75 Ia. 429.

Recent examples of the second class may be found in *Festorazzi* v. *St. Joseph's Church*, 18 So. Rep. 394 (Ala.) ; *Holland* v. *Alcock*, 108 N. Y. 312 ; and *McHugh* v. *McCole*, 72 N. W. Rep. 631 (Wis.).    In this last case the court held a gift of this kind to be invalid because its form implies a trust, but, at the same time, it said this : "We know of no legal reason why any person of the Catholic faith, believing in the efficiency of masses, may not make a direct gift or bequest to any bishop or priest, of any sum out of his property or estate, for masses for the repose of his soul, or the souls of others, as he may choose.    Such gifts or bequests, when made in clear, direct, and legal form, should be upheld ; and they are not to be considered as impeachable or invalid, under the rule that prevailed in England, by which they were held to be void as gifts to superstitious uses."

The third class of cases is like those which this court referred to in *Williams* v. *Herrick*, 19 R. I. 197, relating to something to be done and ended, such as erecting a monument or a building ; as to which we said that we made no question that a devise with such a simple direction would be good.

The essential distinction between these classes of cases is not the legality of the purpose of the gift but the creation of a perpetuity.    A charitable trust may be in perpetuity but a a private trust cannot be.    If a gift is a charitable trust it will be good whenever it is to be executed.    If it is not a charitable trust it will be good if it has the proper elements of a trust and is to be executed within the limit allowed by law ; or it will be good if it is an outright gift for a specified legal object, although it may not have all the elements of a trust, but may be only what has been called an honorary trust, an expression of a desired purpose rather than an

imposed condition, for present execution and not in perpetuity.

This will presents an example both of a gift in perpetuity for a private trust, *i. e.*, for the care of the testator's burial lot, and an outright gift for masses. The former is invalid. *Kelley* v. *Nichols*, 17 R. I. 306 ; *Williams* v. *Herrick, supra.* The latter, the gift for masses, is valid, as one which takes effect at once, like any personal bequest for a legal object. It is evidently not intended to be a trust, as it is for the parish priest himself, for his own service in saying masses. A gift to one for a mourning ring would not be a trust ; and this is the same in principle. In each case the testator would seek a posthumous benefit ; a memorial of his personality in one case, and a benefit to his soul in the other. In both cases the substance of the gift would go to the legatee, and one is not a trustee for himself. It is not precisely like the gift for a monument, for that is not intended to go to the legatees and is like a trust, except that it lacks a living beneficiary ; but given a legal bequest, not personal to the legatee or to his use, and it is hard to see why it should not be enforced as a trust. The answer that there is no one in interest to have a standing in court is met by the rejoinder that an heir at law of the testator has a sufficient interest to see that the will is carried out. See article by Prof. James B. Ames on Failure of Tilden Trust, 5 Harv. Law Review, 389. But however this may be, there can be no doubt that the bequest in the tenth clause of the will is good, for the reasons we have stated. This view is supported by *Moran* v. *Moran,* 73 N. W. Rep. 617 (Iowa) ; *Seda* v. *Huble, supra; Vandeveer* v. *McKane,* 25 Abb. New Cas. 105 ; *Gilman* v. *McArdle,* 99 N. Y. 451 ; *Reichenbach* v. *Quin,* 21 Irish Rep. 138. This case is expressly put upon the ground that no perpetuity is created.

We are also of opinion that the legatee designated in the tenth clause was intended to be the parish priest in office when the will should take effect.

The second question is whether the gifts of the residue in the 13th and 14th clauses relate to the residue mentioned in

the second clause or to the residue after taking out the legacies in the intervening clauses. The will is very crudely drawn. It starts out with a residue after the burial expenses; then refers again to a residue in these clauses, and, as though these were not residues enough, another residuary clause is added at the end of the will. We think that the testator must have meant the residue referred to in the second clause. That was the net remainder of his property to be divided. In the twelfth clause he gives the income of one-third of all his "said estate" to his wife for life, and in the next clause he gives two-sixths to the children of her brother and the children of Thomas Murphy.

But one-sixth is described as a part "of all the said residue of my estate," and the other as "one-sixth part of all of my said estate." Evidently he did not mean to make a distinction in these two gifts. They just made up the one-third given to his wife for life and which was to pass upon her death, and the indiscriminate use of the words residue and estate show that they meant the same thing.

In clause 14 he gives one-third "of all the said residue;" and here again we think that he must have had in mind the net remainder of his estate which he was dividing.

This construction is supported by the scheme of the will. The final residuary clause has the phrase "if any there should be;" which shows that, to his mind, about all of the property had been divided, and it was doubtful if any would remain. By the terms of the will the pecuniary legacies were about one-third of the value of his property; one-third to his wife and one-third to Catherine Baker. This would dispose, very nearly, of the whole estate. If the sale of the real estate should be favorable, there might be a surplus in the third devoted to pecuniary legacies, and so, to be sure that nothing should be left over, the final residuary clause was tacked onto the will, on a separate slip, as an evident after-thought, to provide for a possible contingency. But under any other construction there must have been a residue. For if the residue in clauses 13 and 14 refer to the remainder after the payment of the pecuniary legacies, the testator would only give

away two-thirds and would leave one-third of that residue not bequeathed. Upon this answer the third question becomes immaterial.

The fourth question is whether the bequests to the children of Thomas Keenan and of Thomas Murphy refer to children living at the death of the testator or at the death of his wife, when the legacies are payable, after the determination of the life estate. For the reasons given in *Chafee* v. *Maker*, 17 R. I. 739, and *Pond* v. *Allen*, 15 R. I. 171, we think that the gifts took effect at the death of the testator. They were present gifts, although postponed in payment; and as there was no uncertainty in the happening of the event upon which the payment depended, but only as to the time of happening, the interest vested upon the death of the testator.

The fifth question is whether the refusal of the widow to accept the provisions of the will in lieu of her dower, and the setting off of a portion of the real estate as her dower, permit the administrator to divide the balance of the estate, which he has converted into cash, before the death of the widow. We think there can be no doubt that the administrator has the right to pay legacies as far as he can before the death of the widow. The payment of only one-third of the estate was to await her death, and that because she was to have the income for life. This she has refused by applying for and securing dower. There is no reason now to hold that third of the estate until her death. But the will contemplated that all the real estate should be converted into money and that the division should then be made; and, as all of the real estate cannot now be sold until after her dower interest has terminated, the question is made whether there can be any division at all until after her death. The parties interested need not and ought not to be kept out of what belongs to them. A state of affairs has come which the testator did not look for. The conversion of the whole estate cannot take place at once. But that is no reason why the legatees should not have as much of their legacies as can now be paid, waiting for the balance until the rest of the estate can be converted into money, according to the will.

The election of the widow to take dower has effaced the life estate and so advanced the interests in remainder. 20 Am. & Eng. Enc. L. 897; *In re Schultz,* 71 N. W. Rep. 1079 (Mich.); *Eavestaff* v. *Austin,* 19 Beav. 591.

*Herbert Almy* and *James M. Gillrain,* for complainants. *David S. Baker, Charles E. Gorman,* and *Lewis A. Waterman,* for respondents.