[Civ. No. 8640. First Appellate District, Division One.—September 12, 1932.]

In the Matter of the Estate of MARGARET WARD, Deceased. KATE O. CUSACK, Appellant; JOHN DOYLE, as Executor, etc., et al., Respondents.

Hubbard & Hubbard for Appellant.

David M. Burnett and John M. Burnett for Respondents.

SPENCE, J.—Appellant, the next of kin of the deceased, appeals from the decree of final distribution in the above-entitled estate.

By said decree the estate was distributed in accordance with the provisions of the will and codicils of the deceased. In the trial court appellant objected to such distribution on the ground that a provision of the second codicil, which was executed within thirty days of the death of the testator, was invalid under section 1313 of the Civil Code (now section 41 of the Probate Code). The provision of the codicil claimed to be invalid reads as follows:

"In addition to the bequest and devise of one-fourth of the rest and residue of my estate in paragraph 'Twelfth' of my said will and testament made to the person who at my death shall be the pastor in charge of St. Patrick's Roman Catholic Church at San Jose, California, I give, devise and bequeath unto such person, one-half of the rest and residue of my estate of every kind and character and wheresoever situated to be used by such person to procure masses to be said for the repose of my soul."

Under this provision the specified portion of the residue of the estate, amounting in value to about $5,000, was distributed to Rev. Richard Collins, who was the pastor of the designated church at the time of the death of the deceased, "to procure masses to be celebrated for the repose of the soul of the decedent".

The question presented on this appeal requires a consideration of the nature of a bequest to a pastor for the purpose of masses for the repose of the soul of the testator. On this general subject the authorities are far from harmonious. As pointed out in the *Estate of Lennon,* 152 Cal. 327 [125 Am. St. Rep. 58, 14 Ann. Cas. 1024, 92 Pac. 870], masses for the dead were called "a superstitious use" and were forbidden by statute in England. In this country we find no such statutes, but nevertheless bequests for masses have not always been upheld. The case of *Festorazzi* v. *St. Joseph's Catholic Church of Mobile,* 104 Ala. 327 [53 Am. St. Rep. 48, 25 L. R. A. 360, 18 South. 394], illustrates the difficulty which the courts have encountered in attempting to classify this type of bequest. There the bequest was "to be used in solemn masses for the repose of my soul". The court was divided, but held the bequest invalid. The writer of the opinion reasons that the bequest could not be upheld as a direct gift as it was in the nature of a trust; that it could not be upheld as a trust for a charitable use as the bequest "is, according to the religious belief of the testator, for the benefit of his own soul and cannot be upheld as a public charity without offending every principle of law upon which such charities are supported"; and further, that "it is not valid as a private trust, for the want of a living beneficiary".

Such bequests, however, have been looked upon with favor and upheld in most jurisdictions, but not always upon the same grounds. In some jurisdictions bequests to pastors for the purpose of masses have been treated as valid gifts to the pastors and not as trusts. (*Sherman* v. *Baker,* 20 R. I. 446 [40 L. R. A. 717, 40 Atl. 11] ; *Harrison* v. *Brophy,* 59 Kan. 1 [40 L. R. A. 721, 51 Pac. 883] ; *In re Zimmerman's Will,* 22 Misc. Rep. 411 [50 N. Y. Supp. 395] ; *In re Howard's Estate,* 5 Misc. Rep. 295 [25 N. Y. Supp. 1111].) This view appears to be the one adopted by our own Supreme Court. (*Estate of Hamilton,* 181 Cal. 758, at p. 764 [186 Pac. 587].) In other jurisdictions bequests for masses have been sustained as private trusts despite the fact that there is no living beneficiary. (*Moran* v. *Moran,* 104 Iowa, 216 [65 Am. St. Rep. 443, 39 L. R. A. 204, 73 N. W. 617].) Still other jurisdictions have felt the necessity of treating such bequests as charitable trusts in order to sustain them.

(*Obrecht* v. *Pujos*, 206 Ky. 751 [268 S. W. 564]; *In re Kavanaugh's Estate*, 143 Wis. 90 [28 L. R. A. (N. S.) 470, 126 N. W. 672]; *Morris* v. *Edwards*, 227 N. Y. 141 [124 N. E. 724]; *Hoeffer* v. *Clogan*, 171 Ill. 462 [63 Am. St. Rep. 241, 40 L. R. A. 730, 49 N. E. 527].) In *Moran* v. *Moran, supra,* the bequest read, "I will and bequeath to the Catholic priest who may be the pastor of the Beaver Catholic Church when this will shall be executed three hundred dollars, that masses may be said for me". The court held that no charitable trust was created but sustained this provision as a valid private trust. The court said at page 622 [73 N. W.]: "We have said that this bequest, if the priest should accept the money, is a private trust; and we think it possesses the essential elements of such a trust, as much as it would if the object were the erection of a monument or the doing of any other act intended alone to perpetuate the memory or name of the testator. But even if there is a technical departure, because of no living beneficiary, still the bequest is valid." The court there also said on the same page: "It is not wise, in such cases, for courts to quibble about technical trusts or beneficiaries. Results are of greater importance than technical names, and a bequest for a known lawful purpose, where the power of execution is prescribed and available, should never fail for want of a name or a legal classification, unless it is in obedience to a positive rule of law."

Before discussing the authorities in this jurisdiction, we should further analyze the precise question before us. Section 1313 of the Civil Code, so far as it may have any application to the present case, reads as follows: "No estate, real or personal, shall be bequeathed or devised to any charitable or benevolent society or corporation, or to any person or persons in trust for charitable uses, except the same be done by will duly executed at least thirty days before the decease of the testator." In the present case we find no bequest to "any charitable or benevolent society or corporation". We are dealing with a bequest to a person and unless such bequest was "in trust for charitable uses" the above-mentioned section has no application. Appellant contends that such bequest is one "in trust for charitable uses", while respondent contends that there is no trust and

at any rate that there is no trust for a charitable use. In our opinion appellant's contention cannot be sustained.

Our attention has been called to but two cases in this jurisdiction dealing with this question of bequests for masses. In *Estate of Lennon,* 152 Cal. 327 [125 Am. St. Rep. 58, 14 Ann. Cas. 1024, 92 Pac. 870], a bequest of $3,500 to Bishop Conaty "to have the same amount of masses celebrated as soon as possible for my soul" was held not to be "a bequest for charity or charitable use" within the meaning of section 1313 of the Civil Code. Subsequently the Supreme Court had under consideration several bequests of a somewhat similar nature in *Estate of Hamilton,* 181 Cal. 758 [186 Pac. 587]. On pages 764 and 765 of the opinion the court considered the bequests made by the testator to the pastors of several churches "for masses for the repose of the soul of John P. Gallagher" and held said section 1313 was not applicable as these bequests created no trust. The court points out that while the pastors "receive the money upon the obligation to offer masses as required, such obligation does not go to the use or disposition of the money". The court there considered other bequests to certain bishops of the Roman Catholic Church for masses for the repose of the souls of the testator and other persons to be said in certain designated churches within the jurisdiction of said bishops and held section 1313 of the Civil Code to be applicable to such bequests. The distinction made by the court was that the last-mentioned bequests created trusts as it was intended that the bishop "would use the legacy, not for his own benefit or as he saw fit, but for paying the stipends of the pastors in whose churches and by whom the masses were to be offered" and that the obligation of the bishop "was one as to the disposition and use of the money given him". The court then proceeded to declare that under the evidence before it "as to the purposes and results of the mass according to the doctrine of the church", such a bequest "in trust for masses is a trust for charitable uses".

We do not believe that the evidence before us on this subject is the same as the evidence considered by the court in *Estate of Hamilton, supra.* The Supreme Court there discussed the opinion in *Estate of Lennon, supra,* and said that the question of whether the bequest for masses is a bequest for a charitable use is "purely a question of fact, a

question as to the purposes and results of the mass according to the doctrine of the church, and if in the present case the evidence of the fact is different and requires a different conclusion, effect must be given to it''. But it is unnecessary for us to discuss the evidence in the present case relating to the primary object, character, purposes and results of the masses said for the repose of the soul of a particular person. Here we are concerned with a bequest to a *pastor* for the purpose of such masses and even if the evidence in this case relating to such masses led to the conclusion on that subject reached by the court in *Estate of Hamilton, supra,* still there is no trust, for while such pastor ''will receive the money upon the obligation to offer masses as required, such obligation does not go to the use or disposition of the money''.

A bequest to an individual does not come within the meaning of section 1313 of the Civil Code unless it is a bequest both ''in trust'' and ''for charitable uses''. This is clearly indicated in *Estate of Hamilton, supra,* at page 772, where the court said: ''Section 1313 of the Civil Code provides no limitation upon gifts in general for charitable purposes. It places such limitation only upon gifts to charitable corporations or societies or in trust for charitable uses. The bequests in this case to the pastors do not come in either of these classes.''

In the present case the bequest was to the pastor with no direction as to the place or places in which or the person or persons by whom the masses should be read. The pastor was himself a Catholic priest who was capable of celebrating the masses and he could celebrate all of the masses himself or he could, if he saw fit, obtain the co-operation of other priests for that purpose. There is nothing to show that the testator intended to impose any obligation on the pastor other than the obligation to see that the masses were said and he was not required to go beyond his own efforts to fulfill this obligation. In other words, the obligation did not ''go to the use and disposition of the money'' and there was no trust (*Estate of Hamilton, supra; Sherman v. Baker, supra; Harrison v. Brophy, supra; In re Zimmerman's Will, supra; In re Howard's Estate, supra.*)

The decree of final distribution is affirmed.

Sturtevant, J., and Nourse, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on October 11, 1932, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 10, 1932.