JAMES F. K. HOEFFER *et al.*

*v.*

PATRICK CLOGAN *et al.*

*Opinion filed February 14, 1898.*

1. APPEALS AND ERRORS—*a freehold is involved in appeal from a decree holding devise of real estate void.* A freehold is involved in an appeal from a decree holding that a specific devise of the fee simple title to real estate is void, and that such title passed under the residuary clause of the will under construction.

2. SAME—*parties—when appeal will not be dismissed on ground appellants have no interest.* Officers and trustees of an unincorporated religious society, to which a charitable bequest has been made, are proper parties defendant to a bill for the construction of the will and the determination of the validity of the bequest, and may appeal from a decree holding such bequest invalid.

3. CHARITIES—*statute of charitable uses of Elizabeth is in force in Illinois.* The statute of charitable uses (43 Eliz. chap. 4,) is a part of the common law of Illinois, and is considered in determining the general spirit and intent of the term "charitable" and the objects which are to be regarded as coming within its meaning.

4. SAME—*charity defined.* A charity is a gift to be applied, consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their hearts under the influence of education or religion, by relieving their bodies from disease, suffering or constraint, by assisting them to establish themselves for life, or by erecting or maintaining public buildings or works, or otherwise lessening the burthens of government. (As approved and adopted in *Crerar* v. *Williams*, 145 Ill. 625.)

5. SAME—*English doctrine of superstitious uses is not in force in Illinois.* The doctrine of superstitious uses, arising from the statute of 1 Edward VI, chap. 14, under which devises for procuring the saying of masses were held void, is not in force in Illinois and has never obtained in the United States.

6. SAME—*devise in trust for saying masses for testator's soul is a valid charitable bequest.* A devise of real estate to a religious society in trust, the property to be sold and the proceeds expended for saying masses for the repose of the testator's soul and the souls of his relatives, is a valid charitable bequest.

7. SAME—*charitable bequest will not be allowed to fail for want of a trustee.* A devise in trust to an unincorporated religious society, for charitable purposes, will not be allowed to fail for want of a trustee, as the court will appoint a trustee to take the gift and apply it to the purposes of the trust

APPEAL from the Circuit Court of Cook county; the Hon. O. H. HORTON, Judge, presiding.

WILLIAM DILLON, for appellants:

The English doctrine of charitable uses is in force in the State of Illinois. *Heuser* v. *Harris*, 42 Ill. 425; *Crerar* v. *Williams*, 145 id. 625.

A bequest to procure or further the performance of an act of public worship is a charitable bequest, within the meaning and scope of the doctrine referred to. *In re Schouler*, 134 Mass. 426; *Duror* v. *Motteux*, 1 Ves. Sr. 320.

For a definition of "charity," see *Jackson* v. *Phillips*, 14 Allen, 556; *Crerar* v. *Williams*, 145 Ill. 625; 3 Am. & Eng. Ency. of Law, (1st ed.) p. 130, par. 6; *Straus* v. *Goldsmid*, 8 Sim. 614; *Farquhar* v. *Darling*, 1 Ch. Div. 50; *Attorney General* v. *Hall*, 2 Irish, 291.

A bequest to a certain church, *eo nomine*, is a charitable bequest, as being presumably intended for the building, repairing or beautifying of a place of public worship. *Jones* v. *Habersham*, 107 U. S. 174; 3 Am. & Eng. Ency. of Law, (1st ed.) p. 130, par. 6; *Hoare* v. *Osborne*, L. R. 1 Eq. 585.

A gift to a church or to a society which cannot take, *eo nomine*, because not incorporated, is one of the cases in which the doctrine of charitable uses will help out and make valid a bequest which would fail if it were not charitable. *Heuser* v. *Harris*, 42 Ill. 425; *Crerar* v. *Williams*, 145 id. 625; *Jones* v. *Habersham*, 107 U. S. 174; *Russell* v. *Allen*, id. 163; *Schmitt* v. *Hess*, 60 Mo. 591; *Johnson* v. *Mayne*, 4 Iowa, 180; *Seda* v. *Hubble*, 75 id. 429.

A. J. REDMOND, and AVERY R. HAYES, for appellees:

The bequest was made to the Holy Family Church in trust, with explicit direction that the church expend the proceeds for a definite purpose. The church was given no discretionary power to either retain the property for its general uses or to expend it, and it therefore takes no

beneficial interest in the bequest. *Oliffe* v. *Wells*, 130 Mass. 223; *Nichols* v. *Allen*, 130 id. 212; *Owens* v. *Society*, 14 N. Y. 380; *Festorazzi* v. *St. Joseph's Church*, 104 Ala. 327.

The beneficiaries intended by the testator are clearly indicated in the will, and it is not within the power of our judiciary to name or designate other or different beneficiaries. That would be simply a ministerial act, and not within the *cy pres* doctrine. *Hunt* v. *Fowler*, 121 Ill. 276; *LePage* v. *McNamara*, 5 Iowa, 124; 2 Perry on Trusts, (3d ed.) 719; *Green* v. *Blackwell*, 35 Atl. Rep. 375.

The bequest creates a trust, with nothing but an inanimate object (a church building) as trustee and the souls of particular persons (all deceased) as beneficiaries. As a private trust it cannot be held valid for the want of a beneficiary, either in existence or to come into existence, who can come into court and enforce the execution of the trust, and also for the want of a trustee capable of taking legal title to the property. *Levy* v. *Levy*, 33 N. Y. 107; *Holland* v. *Alcock*, 108 id. 313; Perry on Trusts, (3d ed.) sec. 687; *Festorazzi* v. *St. Joseph's Church*, 103 Ala. 327.

It is an essential feature of public or charitable trusts that the beneficiaries are uncertain,—a class of persons described in some general language,—often fluctuating, changing in their individual numbers, and partaking of a *quasi* public character. English Statute of Charitable Uses, 43 Eliz. chap. 4; *Jackson* v. *Phillips*, 14 Allen, 556; *Heath* v. *Chapman*, 2 Drew, 423; *Crerar* v. *Williams*, 145 Ill. 642; 1 Jarman on Wills, (5th ed.) 211; *Hunt* v. *Fowler*, 121 Ill. 275; Perry on Trusts, (3d ed.) sec. 710; *Russell* v. *Allen*, 107 U. S. 163; *Festorazzi* v. *St. Joseph's Church*, 104 Ala. 327; 3 Am. & Eng. Ency. of Law, 123, 127.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Andrew Clogan, of Chicago, died June 6, 1892, leaving a last will and testament, which was admitted to probate and letters testamentary were issued to the executor,

James Clogan. The fourth and fifth clauses of the will are as follows:

"*Fourth*—I give and devise unto the Holy Family Church, (on West Twelfth street,) its successors and assigns, lot 56 in Sharp & Smith's subdivision of block 42, in the canal trustees' subdivision of the west one-half (W. $\frac{1}{2}$) of the west one-half (W. $\frac{1}{2}$) of the north-east quarter (N. E. $\frac{1}{4}$) of section seventeen (17), town thirty-nine (39) north, range fourteen (14), east of the third principal meridian, in Chicago, Cook county, Illinois, together with the building and improvements thereon, in trust for the following purposes: to sell the same and expend the proceeds of said sale in saying masses for the repose of my soul and the souls of my deceased wife, Margaret Clogan, my mother-in-law, Ellen Hurley, and my brother-in-law, James Hurley.

"*Fifth*—I give and bequeath unto the Holy Family Church (on West Twelfth street) the sum of $1000 in trust, to be expended in saying masses for the repose of my soul and the soul of my deceased father, Patrick Clogan, mother, Julia Clogan, and sister, Margaret Clogan."

By the will the testator also directed the expenditure of $250 in erecting a monument on his lot in Calvary Cemetery, bequeathed $500 to his sister Mary Daly, and devised certain real estate to his brother, Patrick Clogan, and his nephew, the executor, James Clogan, and by the seventh clause said James Clogan was made residuary devisee.

On March 17, 1896, said Patrick Clogan purchased from said James Clogan all his interest as residuary devisee in the property mentioned in the fourth clause of the will, and afterward filed the bill in this case alleging the above facts, and averring that there was no society or corporation in Chicago, on West Twelfth street, known as the Holy Family Church, but that there was an unincorporated religious society known as the Holy Family Parish which had a church on West Twelfth street, and

171—30

that the title to said church was in the appellants, clergy-men, who are, respectively, rector, assistant rector and treasurer of said Holy Family Parish, and their succes-sors, as such, in trust for the purposes of the Society of Jesus, including the maintenance of the church, for the benefit of the Holy Family Parish. The Holy Family Church, James Clogan, in his own right and as executor, Mary Daly and appellants, were made defendants. The prayer of the bill was, that the will should be construed and the validity of the devise and bequest to be expended in saying masses for the repose of souls should be deter-mined. James Clogan and Mary Daly answered, admit-ting the allegations of the bill. The amended answer of appellants admitted the facts alleged in the bill, and averred that the church referred to therein was com-monly known as the Holy Family Church, and was the only one in Chicago of that name; that the mass was a solemn act of worship according to the belief and prac-tice of the Roman Catholic Church; that mass was cele-brated several times each day at the said Holy Family Church, and that whenever mass was so celebrated the doors of the church were open, and such of the public as might desire to worship at such celebration of mass were admitted to do so. The cause was heard on the bill and answers so filed, and the court decreed the fourth and fifth clauses of the will null and void; that the title to the lot therein described was vested in Patrick Clogan, as grantee of the residuary devisee, and that the $1000 mentioned in the fifth clause should be paid to the residu-ary legatee, James Clogan, in due course of administra-tion. An appeal to this court was prayed by appellants and allowed by the court.

Appellee Patrick Clogan has moved to dismiss the ap-peal for want of jurisdiction, and because appellants have no interest in the cause. The purpose of the bill was to settle the question whether the fee simple title to the lot described in the fourth clause of the will passed under

that clause, or whether the attempted devise was void and the title passed to the residuary devisee under the seventh clause. The decree of the circuit court held the devise of the freehold by the fourth clause void, and established title in Patrick Clogan. A freehold is involved in the appeal from that decree. Appellants are the officers of the Holy Family Parish, and trustees representing the religious society to which the devise was made. They were made defendants to the bill as representing such society, and their official relation to the parish and church makes them proper parties to represent it in the question of the true construction of the will and the validity of the devise and bequest. The motion to dismiss the appeal is denied.

The devise and bequest were made to the Holy Family Church in trust for a specific purpose, which was, that the church expend the proceeds of the sale of the real estate and the amount of the bequest in masses for the repose of the souls of the persons named. They were not intended as gifts to the church for its general uses, and any other application than that specified in the will would contravene the purpose of the testator. This being so, it is claimed that the trust is void, because it is a private trust with the souls of particular deceased persons as beneficiaries, none of whom can come into court and call the trustees to account or enforce its execution, and also for want of a trustee capable of taking legal title to the property. On the other hand, it is claimed that the devise and legacy are for a charitable use within the meaning and spirit of the doctrine on that subject, and if this position is correct, the rules of law which would invalidate them as an express private trust will not affect their validity.

The doctrine of charitable uses has been repeatedly held to be a part of the law of this State. The equitable jurisdiction over such trusts was not derived from the statute of charitable uses, (43 Eliz. chap. 4,) but prior

to and independently of that statute charities were sustained, irrespective of indefiniteness of the beneficiaries or the lack of trustees or the fact that the trustees appointed were not competent to take. (*Heuser* v. *Harris*, 42 Ill. 425; *Vidal* v. *Girard*, 2 How. 127.) The statute, however, became a part of the common law of this State. *Heuser* v. *Harris, supra; Hunt* v. *Fowler*, 121 Ill. 269; *Andrews* v. *Andrews*, 110 id. 223.

The statute of charitable uses of Elizabeth has, since its passage, been considered as showing the general spirit and intent of the term "charitable," and the objects which come within such general spirit and intendment are to be so regarded. The definition given by Mr. Justice Gray in the case of *Jackson* v. *Phillips*, 14 Allen, 56, was adopted and approved by this court in the case of *Crerar* v. *Williams*, 145 Ill. 625. It is as follows: "A charity, in a legal sense, may be more fully defined as a gift, to be applied, consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their hearts under the influence of education or religion, by relieving their bodies from disease, suffering or constraint, by assisting them to establish themselves for life, or by erecting or maintaining public buildings or works, or otherwise lessening the burthens of government. It is immaterial whether the purpose is called charitable in the gift itself, if it is so described as to show that it is charitable in its nature." Any trust coming within this definition for the benefit of an indefinite class of persons sufficiently designated to indicate the intention of the donor, and constituting some portion or class of the public, is a charitable trust. Among such objects are the support and propagation of religion and the maintenance of religious services, (*Andrews* v. *Andrews, supra,*) to pay the expense of preaching and salary of rectors, (*Alden* v. *St. Peter's Parish*, 158 Ill. 631,) or the preaching of an annual sermon in memory of the testator. *Duror* v. *Motteux*, 1 Ves. Sr. 320.

The doctrine of superstitious uses arising from the statute 1 Edward VI, chap. 14, under which devises for procuring masses were held to be void, is of no force in this State and has never obtained in the United States. In this country there is absolute religious equality, and no discrimination, in law, is made between different religious creeds or forms of worship. It cannot be denied that bequests for the general advancement of the Roman Catholic religion, the support of its forms of worship or the benefit of its clergy, are charitable, equally with those for the support or propagation of any other form of religious belief or worship. The nature of the mass, like preaching, prayer, the communion, and other forms of worship, is well understood. It is intended as a repetition of the sacrifice on the cross, Christ offering Himself again through the hands of the priest and asking pardon for sinners as He did on the cross, and it is the chief and central act of worship in the Roman Catholic Church. It is a public and external form of worship,—a ceremonial which constitutes a visible action. It may be said for any special purpose, but from a liturgical point of view every mass is practically the same. The Roman Catholic church believes that christians who leave this world without having sufficiently expiated their sins are obliged to suffer a temporary penalty in the other, and among the special purposes for which masses may be said is the remission of this penalty. A bequest for such special purpose merely adds a particular remembrance to the mass, and does not, in our opinion, change the character of the religious service and render it a mere private benefit. While the testator may have a belief that it will benefit his soul or the souls of others doing penance for their sins, it is also a benefit to all others who may attend or participate in it. An act of public worship would certainly not be deprived of that character because it was also a special memorial of some per-

son, or because special prayers should be included in the services for particular persons. Memorial services are often held in churches, but they are not less public acts of worship because of their memorial character, and in *Duror* v. *Motteux, supra,* the trust for the preaching of an annual sermon in memory of the testator was held to be a charitable use. The mere fact that the bequest was given with the intention of obtaining some benefit or from some personal motive does not rob it of its character as charitable. The masses said in the Holy Family Church were public, and the presumption would be that the public would be admitted, the same as at any other act of worship of any other christian sect. The bequest is not only for an act of religious worship, but it is an aid to the support of the clergy. Although the money paid is not regarded as a purchase of the mass, yet it is retained by the clergy, and, of course, aids in the maintenance of the priesthood.

In the case of *Schouler, Petitioner,* 134 Mass. 426, it was held that a bequest of money for masses was a good charitable bequest of the testatrix, and the court said: "Masses are religious ceremonials or observances of the church of which she was a member, and come within the religious or pious uses which are upheld as public charities." So in Pennsylvania, it has been held that a bequest to be expended in masses for the repose of souls is a religious or charitable bequest under the statute. (*Rhymer's Appeal,* 93 Pa. St. 142; *Seibert's Appeal,* 18 W. N. Cas. 276.) A recent case decided in the Irish courts, January 24, 1897, is *Attorney General* v. *Hall.* It was held unanimously, both in the Exchequer and the Court of Appeals, that a bequest for saying masses for the soul of a deceased person was a good charitable bequest.

In New York and Wisconsin it has been held that a trust of this character is void for the want of a definite beneficiary to enforce its execution. (*Holland* v. *Alcock,* 108 N. Y. 312; *McHugh* v. *McCole,* (Wis.) decided October

27, 1897.)   But the decisions in those States are readily distinguishable from the rule in this State.   In New York charitable uses were abolished by legislation, and in all valid trusts there must be a definite and certain beneficiary to take the equitable title, unless the act of 1893, which is said to have resulted from the decision in *Tilden* v. *Green*, 130 N. Y. 29, has enlarged or relaxed the rule as to a definite beneficiary.   In Wisconsin all trusts are abolished by statute, except certain specific trusts where there is certainty in the beneficiaries, and in that State bequests have been held to be void which have been uniformly sustained in this court as for charitable purposes.   The decision in *McHugh* v. *McCole, supra*, was upon the ground that the doctrine of charitable uses was not in force in that State, and that a trust, to be sustained, must be of a clear and definite nature, and the beneficiary interest to every person therein must be fully expressed and clearly defined upon the face of the instrument.   The will in that case gave a certain sum of money to the Roman Catholic bishop of the diocese of Green Bay, Wisconsin, to be used and applied in specified amounts for masses for the repose of testator's soul and the souls of certain named persons.   It was held invalid solely on the ground that the provision amounted to a trust which, under the statutes of that State, was invalid.   It was said that if the testator had made a direct bequest of the sum in question to Bishop Messmer, or to any bishop or priest, for masses for the repose of the souls of persons named in his will it would be valid, and the court said: "We know of no legal reason why any person of the Catholic faith believing in the efficacy of masses may not make a direct gift or bequest to any bishop or priest of any sum out of his property or estate for masses for the repose of his soul or the souls of others, as he may choose."   The court expressed regret that the intention of the testator could not be given effect because he had put it in the form of a trust provision.   So, also, in New

York it has been held in several cases that a bequest to a named priest for the saying of masses for the repose of the souls of specified persons is valid. *Ruppel* v. *Schlegel*, 7 N. Y. Sup. 936; *In re Howard's Estate*, 25 id. 1111; *Vanderveer* v. *McKane*, 25 Abbott's N. C. 105.

The case of *Festorazzi* v. *St. Joseph's Catholic Church*, 104 Ala. 327, holds that a bequest to that church in the city of Mobile, to be used in solemn mass for the repose of testator's soul, could not be supported as a charitable bequest. The decision seems to be on the ground that the testator's own soul was the exclusive object and beneficiary of the trust, and that no public benefit was to be derived from it and no living person was able to call the trustee to account. We are not able to agree with the conclusion that there is no benefit to the church or public in such case, and, as we have seen, the ceremonial of the mass is a public action which can be seen and taken cognizance of, so that there is no more difficulty in procuring a mass to be said than there is in securing the public delivery of a sermon or a lecture. A bequest for the erection of a public statue or monument to a distinguished person is a good charitable bequest, and yet such person, if deceased, could not enforce its execution, but the courts could and would do it.

We think the devise and legacy charitable, and a rule applicable to trusts is that they will not be allowed to fail for want of a competent trustee. The court will appoint a trustee or trustees to take the gifts and apply them to the purposes of the trust. *Heuser* v. *Harris, supra.*

The decree of the circuit court is reversed and the cause is remanded, with directions to proceed in conformity with the views herein expressed.

*Reversed and remanded.*