Hillsborough,
June, 1898.

## WEBSTER, *Ex'r*, *v.* SUGHROW & *a.*

A provision in a will that the residue of the testator's estate shall be held by
his executor, and expended at his discretion for the saying of masses for
persons named, is valid as a bequest to a charitable use.

Where a will provides that the residue of an estate shall be held by an ex-
ecutor, to be expended at his discretion for annual masses and for the care
of a burial lot, and empowers him to provide in any way that he may deem
proper for the continuation or perpetuation of such services, the two
branches of the trust are to be administered together, by the executor or
some other person appointed by the probate court.

BILL IN EQUITY, for instructions, by the executor of the will
of James Ryan. Facts agreed.

The second provision of the will is as follows: "All the res-
idue and remainder of my estate that may remain at my decease,
both real and personal, I will in trust to my said executor here-
inafter mentioned, to be disposed of by him in the following
manner: First, to pay all necessary funeral charges and expenses
of services connected therewith. The remainder to be held by
said executor at his sole discretion, the income of which, and if
necessary the principal, to pay the expense of keeping my said
burial lot in a proper and respectable condition, and for having
anniversary mass said annually, from the date of my decease,
for myself, my deceased wife, and for her deceased sister Lizzie.

"And I leave it entirely at the discretion of my said executor,
to provide in any way that he may deem proper for the continu-
ation or perpetuation of said services, without any authority or
interference of the probate court or any person whomsoever,
either in regard to this or to the first section of this will.

"And I hereby authorize and empower my said executor, to
sell and convey any and all real estate that I may own at my de-
cease at his discretion, either at public or private sale, as he may
deem best, and execute valid deed or deeds for the same."

The plaintiff seeks instruction upon the following questions:
(1) Does this provision of the will create a charitable trust in the
matter of annual masses? (2) If it does, can he exercise his dis-
cretion in setting apart two certain sums — one for the fund for
the burial lot, the other for the saying of masses — and appoint
trustees to carry into effect the provisions of the trust and pro-
vide for securing perpetual succession thereof?

*George B. French*, for the plaintiff.

*Jeremiah J. Doyle*, for the heirs of James Ryan.

PIKE, J.   1. The statute of 43 Eliz., *c.* 4 (1601), was the cul-
mination of all prior legislation concerning charities.   Since its
passage, those objects are considered charitable that are named
therein and many others that are " not named and not within
the strict letter of the statute, but which come within its spirit,
equity, and analogy."   2 Per. Tr., *s.* 692.

Although the general principles of charitable trusts have been
repeatedly recognized in this state (*Duke* v. *Fuller*, 9 N. H. 536;
*Second Cong. Society* v. *Society*, 14 N. H. 315; *Brown* v. *Concord*,
33 N. H. 285; *Chapin* v. *School District*, 35 N. H. 445; *Dublin
Case*, 38 N. H. 459; *Newmarket* v. *Smart*, 45 N. H. 87), it " has
not been judicially determined " whether this statute has been
adopted.   But concerning this it is not important to inquire,
since " courts of equity have original and inherent jurisdiction
over charities, independent of the statute."   *Goodale* v. *Mooney*,
60 N. H. 528, 533; P. S., *c.* 205, *s.* 1.

" A charity, in the legal sense, may be . . . defined as a gift
to be applied, consistently with existing law, for the benefit of
an indefinite number of persons, either by bringing their minds
or hearts under the influence of education or religion, by reliev-
ing their bodies from disease, suffering, or constraint, by assist-
ing them to establish themselves in life, or by erecting or main-
taining public buildings or works, or otherwise lessening the
burdens of government.   It is immaterial whether the purpose
is called charitable in the gift itself, if it is so described as to
show that it is charitable in its nature."   *Jackson* v. *Phillips*, 14
Allen 539, 556.

No question arises as to the testator's right to create a trust
for the purpose of keeping the "burial lot in a proper and re-
spectable condition."   The state approves of the creation of such
trusts, and provides a way for the appointment of trustees there-
for whenever a vacancy exists.   P. S., *c.* 40, *s.* 5; *Ib., c.* 51, *s.* 8;
Laws 1891, *c.* 19; Laws 1893, *c.* 68; Laws 1897, *c.* 6.   It is in
relation to the creating of a trust for the saying of masses about
which there is contention.

" The doctrine of superstitious uses arising from the statute
(I Edw. VI, *c.* 14) under which devises for procuring masses
were held to be void . . . has never obtained in the United
States.   In this country there is absolute religious equality, and
no discrimination in law is made between different religious
creeds or forms of worship."   *Hoeffer* v. *Clogan*, 171 Ill. 462;
*Holland* v. *Alcock*, 108 N. Y. 312, 329; *Gass* v. *Wilhite*, 2 Dana
170; *Church* v. *Remington*, 1 Watts 218, 224; *McHugh* v. *McCole*,
97 Wis. 166; *Rhymer's Appeal*, 93 Pa. St. 142; *Schouler, Peti-
tioner*, 134 Mass. 426; Const. U. S., Amend., *art.* 1; Bill of
Rights, *art.* 5.

It remains to be considered whether the saying of masses can be upheld as a "charitable use."

In *Seda* v. *Huble*, 75 Ia. 429, a bequest in trust for the benefit of a Catholic church, with directions to "invest said money safely for the benefit of said church, and that service be held in said church for my soul yearly," was held to be valid as a bequest to a charitable use.

In *Schouler, Petitioner*, 134 Mass. 426, a bequest for "burial and funeral expenses and the residue for charitable purposes, masses," etc., was held to be valid on the ground that "masses are religious ceremonials or observances of the church of which she [the testatrix] was a member, and come within the religious, pious uses which are upheld as public charities."

In *Rhymer's Appeal*, 93 Pa. St. 142, the testator, after certain legacies, bequeathed all the residue of his estate "to St. Mary's Catholic church, to be expended in masses for the benefit and repose of" his soul; and it was held to be a religious use, but failed because of a statute of that state requiring all such bequests to be executed with due formality at least one calendar month before the decease of the testator. The court said: "The testator has clearly declared the use or purpose to which his bequest shall be applied. It is to be expended in masses for the benefit and repose of his soul. While this may not be regarded as a charitable use within the accepted meaning of the word, it is certainly in every proper sense of the term . . . a religious use. In the denomination with which the testator appears to have been identified, the mass is regarded as a prominent part of the religious service and worship. According to the Roman Catholic system of faith there exists an intermediate state of the soul, after death and before final judgment, during which guilt incurred during life and unatoned for must be expiated; and the temporary punishment to which the souls of the penitent are thus subjected may be mitigated or arrested through the efficacy of the mass as a propitiatory sacrifice. Hence the practice for offering masses for the departed. It cannot be doubted that in obeying the injunction of the testator and offering masses for the benefit and repose of his soul the officiating priest would be performing a religious service, and none the less so because intercession would be specially invoked in behalf of the testator alone. The service is just the same in kind whether it be designated to promote the spiritual welfare of one or many. Prayer for the conversion of a single impenitent is as purely a religious act as a petition for the salvation of thousands. The services intended to be performed in carrying out the trust created by the testator's will, as well as the objects designed to be attained, are all essentially religious in their character."

In harmony with this last case is the recent decision of *Hoeffer*

v. *Clogan*, 171 Ill. 462, where the testator left to the Holy Family Church, its successors and assigns, real estate in trust to sell and expend the proceeds in saying masses for the repose of his soul, and the souls of his deceased wife, mother-in-law, and brother-in-law ; and a legacy in trust to be expended in saying masses for the repose of the souls of his father, mother, and sister. The devise and legacy were held to be charitable, and were not allowed to fail by want of a competent trustee. It is said in the opinion that " while the testator may have a belief that it will benefit his soul or the souls of others doing penance for their sins, it is also a benefit to all others who may attend or participate in it. An act of public worship would certainly not be deprived of that character because it was also a special memorial of some person, or because special prayers should be included in the services for particular persons. Memorial services are often held in churches, but they are not less acts of worship because of their memorial character. . . . The mere fact that the bequest was given with the intention of obtaining some benefit or from some personal motive does not rob it of its character as charitable."

The saying of mass is a ceremonial celebrated by the priest in open church where all who choose may be present and participate therein. It is a solemn and impressive ritual from which many draw spiritual solace, guidance, and instruction. It is religious in its form and in its teaching, and clearly comes within that class of trusts or uses denominated in law as charitable. And while the effect of these services upon the members of this church is impressive and beneficial, the money expended for the celebrations thereof is of benefit to the clergy, and is to be upheld and maintained for this reason as one of the cherished objects of religious uses. *Dublin Case*, 38 N. H. 459; *Hoeffer* v. *Clogan*, 171 Ill. 462. The upholding of such trusts is in harmony with the principles of our law.

2. The executor is not empowered to set apart one sum for the care of the burial lot and another for the saying of masses. The branches of the trust are to be administered together and by the same trustee. The discretion with which the executor is invested extends only to the methods to be adopted in the performance of this duty. The whole trust is to be administered by him (*Brock* v. *Sawyer*, 39 N. H. 547), or by some one else appointed in his place by the probate court. P. S., *c.* 198, *s.* 6.

*Case discharged.*

All concurred.