**LANZA, Exr., Plaintiff, v. DiFRONZO et, Defendants.**

Probate Court, Cuyahoga County.

No. 405770.

Louis R. Lanza, Cleveland, for Executor, Robert F. Lanza.

Sidney A. Thorman, Cleveland, for Michele DiFronzo, Guiseppi DiFronzo and Angelina DiFronzo.

Feighan & Feighan, Mann & Barber, Cleveland, for St. Therese Church.

## OPINION

By BREWER, J.

This cause came on to be heard on the petition for the construction of the last will and testament of Antonio Di-Fronzo, deceased. The Court has been asked to interpret Item 15, which provides as follows:

"The balance of my estate to go for Masses for the repose of the souls of myself and by beloved wife, Maria DiFronzo."

Certain non-resident defendants, by way of answer, maintain that the instrument under consideration "is not a charitable or religious bequest, and that by reason thereof, the doctrine of cy pres does not apply; that Item 15 is ambiguous, uncertain, without beneficiary who might enforce same, and by reason thereof, the said answering defendants, the next of kin and heirs at law of the decedent are entitled to the residuum or balance of the estate of said decedent."

The defendant, St. Therese Church, in its answer, maintains the residuary bequest is valid, and asks the Court to determine that St. Therese Church is the organization entitled to all the benefits as provided by Item 15.

The cardinal rule for construction of a will is for the Court at all times to ascertain and give effect to the true intention of the testator gathered from the will as a whole, and the Court should go far in trying to place himself in the position of the testator at the time of his making the will. To accomplish this, parol evidence is often permitted to show decedent's relationship with and affection for those persons who are the natural objects of his bounty. These general rules of law have been so often reiterated by the courts of this State, that citations of authority are unnecessary.

Applying them in the light of testimony offered in the case at bar, we find that the decedent, Antonio DiFronzo, had lived in Garfield Heights for many years; that his wife predeceased him; and that there were no surviving issue of the marriage; that the decedent's father and mother were both dead; and that his nearest next of kin were one sister and

nieces and nephews, most of whom reside in Italy, and whom the decedent had not seen for some years.

The testimony discloses further that both the decedent and his wife were devout Catholics, and clearly established that for many years the decedent and his wife were members and regular attendants of St. Therese Church. When both the decedent and his wife died, the last rites were administered to them by the Pastor of St. Therese Church, and their funeral services were conducted in St. Therese Church.

Evidence was offered by the pastor and assistant pastor of St. Therese Church relative to Canon Law, disclosing that membership in various parishes is determined as the result of boundaries, and that if a member desires to be a member of another church not within his parish, he must receive special permission, which is disclosed on the Parish Church's records. In the instant case it was admitted that the census cards of both the decedent and his wife would establish that they had for many years prior to their deaths been members of St. Therese Church. All of the foregoing testimony is undisputed.

Summing up the evidence, it can be logically concluded that the decedent and his wife were primarily devoted to their church and the faith it represented. It can further be concluded that the motivating force which made the decedent deeply religious during his life, created the desire on his part that after his death a major portion of his estate be used for the repose of the souls of his wife and himself. This he attempted to do by leaving his residuary estate for the saying of Masses.

The question in the main, therefore, is whether a gift for the saying of Masses is valid in Ohio. There appears to be but two reported cases relative thereto in this State. Neither of these provide any guidepost for the Court in seeking the rule of interpretation applicable to the instant controversy.

In Fugmann v. Theobald, 12 C. D. 720, the Court in a two-line paragraph decision found a bequest to a pastor of a Roman Catholic Church for the saying of Masses was not a gift for charitable use under the statute then in effect, §5915 GC, now §10504-15 GC. In reversing the lower Court in part (see 4 O. D. 65) it in fact sustained the gift for the saying of Masses, by holding that it was a gift to the Pastor rather than a charitable bequest, because holding otherwise would have invalidated the gift, it having been made within one year from the date of testator's death. Although this may be considered legal gymnastics, it demonstrates how far a Court will go to sustain a gift of this type.

The other reported case is the **Estate of Riley, 138 Oh St 145.** The question decided in that case was whether a gift for the saying of Masses was taxable. The finding by the Supreme Court was an affirmation of the decision of this Court, in which this case had its origin, and at the time that case was decided, the question of whether gifts for Masses were a charitable use was not considered.

On February 14, 1938, this Court in an unreported decision (Case No. 244751) in a matter to construe a will, (Margaret M. Dempsey v. Christ the King Church) found that income to be used for the saying of Masses created a valid charitable trust.

This Court is asked by the next of kin to "reverse its decision in the Dempsey case". It would appear to this Court that if the true nature of Masses were explained and the designation of the object of the payment made clear, there would be no room for any opinion other than that a gift for Masses is charitable. Gifts for Masses have been known to law for many centuries. Political consideration, at the time of the reign of King Edward VI, for the first time were held to be invalid under ecclesiastical and common law. Prior to that time such gifts, through the continent, had been held to be for a charitable purpose and religious use.

When Edward VI ascended the throne such gifts by statutory enactment arising out of political considerations were held to be invalid and the property conveyed thereby was forfeited to the crown. The theory behind the legislation was that such gifts were for superstitious uses and not for legitimate charitable purposes.

In the United States the doctrine of superstitious uses relative to masses has never been recognized. See Vol. 3, Page on Wills, Sec. 1221. Vol. 1 Scott on Trusts, par. 124.4, and Vol. 3 Scott on Trusts, 371.5.

Relative thereto, in Delaware Trust Co. v. Fitzmaurice, 21 Atl. Rep. (2d) 388, the Court said:

"* * * Whatever might have been the real basis of the later English rule, that such a gift was for a superstitious use, and, therefore void, that rule can have no place in a State that recognizes and guarantees that right of religious freedom to all.* * *"

Careful study of Canon Law and judicial decisions would disclose that the Roman Catholic Church regards Masses as a sacrifice to God.

In In re Kavanaugh's Estate, 126 N. W. Rep. 672, on page 675, the Court stated:

"According to the doctrine of the Catholic Church as established by the proof in this case, the whole church profits by every Mass, since the prayers of the Mass include all of the faithful, living and dead. The sacrifice of the Mass contemplates that all mankind shall participate in its benefits and fruit. "The Mass is the unbloody sacrifice of the cross and the object for which it is offered up is in the first place, to honor and glorify God; secondly, to thank Him for His favors; third, to ask His blessing; fourth, to propitiate Him for the sins of all mankind. The individuals who participate in the fruits of this Mass are the person or persons for whom the mass is offered, all of those who assist at the Mass, the celebrant himself, and for all mankind, within or without the fold of the church.' So it seems clear upon reason and authority, under the doctrine of the Catholic Church as established by the evidence in this case, that a bequest for Masses is a 'charitable bequest', and valid as such, although the repose of the souls of particular persons be mentioned. * * *"

According to The Canon Laws of Wills, page 402, paragraph 673, Father Hannan states:

"A Mass can not be bought, because its infinite supernatural value transcends any equivalent in material wealth. The priest has the power to offer this sacrifice; the layman, not. The latter can not buy the favor, and the former can not sell it. But by accepting the gift of the latter, the former binds himself to bestow the favor on the donor rather than on some other man who has not shown benevolence to him. * * *"

The Courts seem united in the opinion that the saying of masses, according to the Catholic theory, is for the betterment of all persons. In Delaware Trust Co. v. Fitzmaurice, supra, we find:

"* * * The celebration of Masses is publicly conducted, and the religious benefit conferred is, therefore, regarded by the Roman Catholic Church as general and public, and not confined to the soul of the person for whom they are said. * * *"

In the case of In re Kavanaugh's Estate, supra, the Court, considering the evidence, found:

"* * * It was shown by competent evidence that the sacrifice of the mass is a public service, not alone for the repose of

the souls of the deceased members mentioned, but for the benefit of all mankind, and so understood by all members of the Catholic Church. So while the Masses may be intended to benefit the souls of the departed mentioned, the benefits are public as well, therefore, come within the designation of a public charity. Masses are religious observances and come within the religious or pious uses which are upheld as public charities. Schouler, Pet. 134 Mass. 426; Rhymer's Appeal, 93 Pa. 142, 39 Am. Rep. 736; Hoeffer et al. v. Clogan et al, 171 Ill. 462, 49 N. E. 527, 40 L. R. A. 730, 63 Am. St. Rep. 241; Webster v. Sughrow, 69 N. H. 380, 45 Atl. 139, 48 L. R. A. 100; Seda et al v. Huble, et al, 75 Iowa 429, 39 N. W. 685, 9 Am. St. Rep. 495; Sherman v. Baker, 20 R. I. 446, 40 Atl. 11, 40 L. R. A. 717. * * *"

The general rule in the United States is well set forth in 10 American Jurisprudence, Sec. 59, page 627:

"* * * Moreover, regardless of the view which has been taken as to the nature of such gifts, they have generally been held to be valid in the United States. It is recognized by many of the American authorities that a gift for the saying of Masses is a valid charitable trust. These cases are based on the reasoning that the saying of mass is a ceremonial celebrated by the priest in open church where all who choose may be present and participate therein, a solemn and impressive ritual form from which many draw spiritual solace, guidance and instruction. It is religious in its form and in its teaching, and clearly comes within the class of trusts or uses denominated in law as charitable. While the effect of these services upon the members of this church is impressive and beneficial, the money expended for the celebration thereof is of benefit to the clergy, and such a trust is to be upheld and maintained for this reason as one of the cherished objects of religious uses. In one jurisdiction it has been held, modifying an earlier view, that a gift for Masses is a gift for the benefit of all mankind and, therefore, valid as a charity. * * *"

We come now to the question as to whether Item 15 is ambiguous, uncertain and without beneficiary who might enforce the same.

This Court has benefited by a very recent decision of United States Court of Appeals for the District of Columbia, in Sedgwick v. National Savings & Trust Co., 130 F. R. (2d) 44,

decided on July 13, 1942, in which the similarity of facts to those at bar are striking. The will of the testator provided:

"Item III. All of the rest, residue and remainder of my estate and property, of whatsoever character, whensoever acquired and wheresoever situate, including all estate and property to or in which I shall have any right, title, claim or interest whatsoever at the time of my death, I give, devise and bequeath, in fee simple and in absolute estate, unto the Holy Name Cathedral, State and Superior Streets, Chicago, Illinois, for Masses for the repose of my soul."

A niece of the testator sought a construction of this clause of the will, alleging that Item III was impossible of administration by reason of uncertainty and ambiguity.

The Court stated:

"(1) We have no doubt that a trust for the saying of Masses for one's soul or for the souls of others—if otherwise valid— is good as a charitable trust. Matter of Kavanaugh's Will, 143 Wis. 90, 126 N. W. 672, 28 L. R. A., N. S. 470; Re Estate of Hamilton, 181 Cal. 758, 186 P. 587; Hoeffer v. Clogan, 171 Ill. 462, 49 N. E. 527, 63 Am. St. Rep. 241; Gilmore v. Lee, 237 Ill. 402, 86 N. E. 568, 127 Am. St. Rep. 330; Coleman v. O'Leary's Exr., 114 Ky. 388, 70 S. W. 1068; Obrecht v. Pujos, 206 Ky. 51, 268 S. W. 564; Re Schouler, 134 Mass. 426; Webster v. Sughrow, 69 N. H. 380, 45 A. 139, 48 L. R. A. 100; Kerrigan v. Tabb, N. J. Ch. 39 A. 701; Moran v. Kelley, 95 N. J. Eq. 380, 124 A. 67, affirmed 96 N. J. Eq. 699, 126 A. 924; In re Morris, 227 N. Y. 141, 124 N. E. 724; Rhymer's Appeal, 93 Pa. 142, 39 Am. Rep. 736; O'Donnell's Estate, 209 Pa. 63, 58 A. 120.

"Professor Bogert states the general rule as follows: 'In nearly all American states where the question has arisen, a trust to spend capital or income for Masses for the soul of the testator, or his relatives, or the souls of other definite persons, or the souls of a class of deceased persons, or the souls of the deceased indefinitely, no matter of what duration the trust may be, will undoubtedly be upheld as a charitable trust for religious uses.' Bogert, Trusts and Trustees, Vol. 2, p. 376, p. 1191.

"(2) Counsel for appellant do not contest this proposition, but insist that the bequest involved here is void because the Holy Name Cathedral is an unincorporated body and that therefore it is impossible for the court to determine whether the bequest is to the church building or to the Catholic Bishop

of Chicago who, as a corporation sole, has title thereto. On this premise, they further argue that there is no possibility of uncertainty as to who should say the Masses—whether the priests of the Cathedral or the Bishop—and that this uncertainty is naturally an uncertainty as to the trust itself. But we think this construction would be straining the universal rule in relation to charitable trusts. **It is enough if the donor sufficiently describes the nature and purposes of the trust, and in general terms the class of beneficiaries.** In Darcey.v. O'Brien, 62 App. D. C. 151, 65 F. 2599, we said, following Russell v. Allen, 107 U. W. 163, 2 St. Ct. 327, 330, 27 L. Ed. 397, '**if the founder describes the general nature of a charitable trust, he may leave the details of its administration to be settled by trustees under the superintendence of a court of chancery.'** * * *"

And, continuing:

"* * * Considered, therefore, from the viewpoint of intent on the part of testator, it is clear that the bequest is, in fact, one to the Bishop, as trustee. **But even if this were otherwise, such a trust will not be held void because of failure by the testator to designate a trustee. In such a case the omission will be supplied by the court by appointment.** Precisely this was held in Burke v. Burke, 259 Ill. 262, 102 N. E. 293, 296. There, as here, it was contended that the parish to which the bequest was made was an unincorporated association incapable of receiving as grantee or acting as trustee, and that consequently the gift could not be sustained as a charitable trust. Dismissing this contention, the court said: '**Where a gift is made to a charitable use and no donee is named, or the donee named is incapable of taking the property, the gift will not fail, but a court of equity may appoint a trustee to carry out the charitable purposes.'**

"**This, we believe, is the rule in all but one or two States in which, by statute, a different rule is applicable.** See Russell v. Allen, supra, and Scott, Trusts, Vol. 1, Sec. 97; Vol. 3, Sec. 397.2. for a full discussion of the subject;; see, also, Hoeffer v. Clogan, supra; Darcey v. O'Brien, supra; Burke v. Burke, supra; In re Kavanaugh's Will, supra; In re Semenza's Will, 159 Misc. 487, 288 N. Y. S. 556; Traver v. Weaver, 221 Ala. 663, 130 So. 209; McDole's Estate, 215 Cal. 328, 10 P. 2d 75; Brinsmade v. Beach, 98 Conn. 322, 119 A. 233; Matter of Winburn's Will, 139 Mis. 5, 247 N. Y. S. 584; Matter of Patterson's Estate, 139 Misc. 872, 249 N. Y. S. 441." (Emphasis ours.)

It was not until this confusion was resolved by the testimony of experts in Canon Law in literally hundreds of cases that the purpose and spiritual reasons underlying the saying of Mass became so well known to the courts that the distinctions between private and public trusts began to disappear. It is now well recognized, as a matter of judicial notice, that there is no difference between Mass said for the repose of the soul of one deceased and any other type of Mass. The Roman Catholic Church regards the Mass as a sacrifice to God. It is a reenactment of the supreme sacrifice made upon the cross. Its purpose remains the same. It is the dedication of a sacrifice for the soul of all mankind who will accept it in atonement for their sins. The purpose of Mass, regardless for whom said, is to give honor and glory to God. The participants thank Him for all the benefits He bestows upon the world. The Mass makes petition to God for those. blessings and graces of which men are in need, and it makes atonement for His offended justice.

When a Mass is said for the soul of a departed individual or group of individuals it also has a special fruit for their particular soul, when the deceased is responsible for the Mass being said, as where he has left a bequest for that. purpose. The merit and grace which inheres is that which attaches to the doing of a good deed. It is so firmly fixed as a matter of general knowledge, that it recognizes no testimony to support the proposition that whether or not the Mass be a special one for the soul of one deceased, it yet remains an act of worship which, according to the doctrine of the church, spiritually and primarily benefits all who participate in it and all who are willing to accept the sacrifice and the atonement offered by it. See In re Estate of Hamilton, 181 Cal. 758 (cited with approval in Dempsey v. Christ the King Church, supra).

According to the doctrine of the Catholic Church a mass most especially procures help and relief for the faithful departed, and is therefore the most effectual means of liberation from purgatory. How soon a soul may be released from purgatory depends upon the will of God. However, upon its liberation from Purgatory, a soul is incapable of further benefits from the saying of Mass, and it is therefore the practice of priests celebrating Mass to offer the Mass with a secondary intention so that the fruits of the Mass will be applied to other souls. This would appear to be an application of the religious cy pres doctrine.

This is further borne out by the Official Text of the Mass, in the "Commemoration of the Dead";

"Be mindful also, O Lord, of thy servants and handmaids (Names) who are gone before us with the sign of faith, and rest in the sleep of peace. To these, O Lord, and to all that rest in Christ, we beseech thee grant a place of refreshment, light and peace. Through the same Christ our Lord. Amen."

Catholic Encyclopedia, "Mass", Vol. X, p. 19, (ii); "The Holy Sacrifice of the Mass", by Rev. Dr. Nicholas Gihr; "Catechism of The Council of Trent for Parish Priests" issued by Order of Pope Pius V; "Roman Missal", Official Text of the Mass.

In the case at bar it must be conceded that the testator did not specifically name a beneficiary. This would appear to be the only distinction which could possibly arise between the Sedgewick case, supra, and the one now under consideration. This exclusion appears unimportant, in view of the uncontradicted testimony offered herein, and which discloses that St. Therese Church was the only church regularly attended by the decedent and his wife, which, together with the Canon Law, unquestionably made them members solely of St. Therese Church, and this Court can correct the omission by ordering the fiduciary to pay the funds to St. Therese Church.

Such was the finding in the case of Obrecht v. Pujos, 206 Ky. 751, wherein the testator provided in his will that Three Hundred Dollars should be expended for the celebration of Masses for the repose of his soul. It was contended that such a provision was void because,

"first, it is not a charitable use within the meaning of our statute; secondly, there is no trustee appointed to carry out the bequest; and thirdly, since no beneficiary is designated, and this is a private trust, it is invalid for the want of a beneficiary to enforce it."

The objections were overruled and the validity of the bequest sustained on the ground that a charitable use was involved and the rule of private trusts was not applicable. The absence of a trustee was not material as the court could remedy that situation by appointing one.

The Court stated, on page 755:

"Lastly, the appellees' insistence that this bequest must fail because no beneficiary is designated is also without merit.

The idea that a gift on trust for benevolent purposes might be void because there was no cestui to enforce the trust originated in Lord Eldon's holding in the case of Morice v. The Bishop of Durham, 10 Ves. 521. As stated by the writer in 11 Harvard Law Review 331, this decision of this eminent judge has had a lamentable effect and has placed a great tax on the ingenuity of judges and lawyers to prevent the extension of its principle. Gifts on trust for the purpose of erecting tombstones, for maintaining stables and kennels have been upheld; see Ford, et al v. Ford, Exr., 91 Ky. 572, 16 S. W. 451; and the principle on which these cases are supported is that the trustee or donee takes subject to a moral obligation to carry out the testator's commands, and if he is willing to act honestly equity will not prevent him, but if he refuses to perform his duty, the heir or next of kin may interfere. As said in the O'Leary case: 'Nor do we see any reason why the application of the fund to the designated purpose may not be enforced by the courts upon the application of the heir.' It cannot be doubted that the testator here intended that the Masses for his soul should be said in some Roman Catholic Church, and if the administrator or trustee appointed should fail to execute this wish, he can be called to account in the fashion indicated. The general class of the use being designated with reasonable certainty, the immediate object thereof may be selected by the trustee. Miller v. Tatum, supra. We cannot essentially distinguish this provision of the will from the like clauses upheld in the O'Leary case. See also Schouler, Petitioner, 134 Mass. 426; Moran v. Moran, 73 N. W. 617 (Iowa); 39 L. R. A. 204, and the note to Hadley v. Forsee, 14 L. R. A. (N. S.) 96. For these reasons, we concur in the finding of the lower court that this first clause of the will is valid."

It is, therefore, the finding and judgment of this Court that under Item 15 of the will of Antonio DiFronzo, deceased, it was the intention of the testator that his residuary estate be paid to St. Therese Church; and the executor of said decedent's will is ordered to pay to St. Therese Church such funds and property which may come into his hands under and by reason of Item 15 of said will.