## SHANAHAN, In re.

Probate Court, Sandusky County.

No. 21417-A.   Decided August 16, 1951.

Leo W. Kenny, Fremont, for executrix of the estate of Margaret Shanahan.

Frank Gallagher, amicus curiae.

John L. King, J. M. Burtch, Jr., Columbus, for department of taxation.

## OPINION

By GABEL, PJ.

Margaret A. Shanahan died June 10, 1949, resident of Sandusky County, Ohio, leaving a last will and testament under the terms of which she provided for the payment of certain legacies and, in the residuary clause which is the part of the will pertinent to the issue in this matter, she directed as follows:

"I direct that all the rest, residue and remainder of my estate, real and personal, of every kind and description wheresoever situate, which I may own or have the right to dispose of at the time of my decease be sold, and of the total of the proceeds of such sale plus all other sums owned by or owing to me, after the payment of all my just debts, funeral expenses, expenses of administration, and any legacy or bequest hereinbefore made, I direct my executrix to expend onesixth for Masses, according to the ritual of the Roman Catholic Church, for the repose of my soul. I further direct my executrix to expend two-thirds of such total for such Masses for the repose of my soul, the souls of my parents, Bartholomew and Margaret Shanahan, and the souls of my brothers, John, Maurice, Bartholomew and Frank Shanahan."

On June 22, 1950, the executrix filed an application and an itemized statement of assets and liabilities for determination of inheritance tax. The court determined the tax finding the amount the executrix was directed to expend for Masses was not a taxable succession, and no tax was assessed. Thereafter, the State Department of Taxation filed exceptions to this determination. In the original exceptions, department also excepted to the exemption of a bequest to St. Vincent De-Paul Society and The Toledo Catholic Charities. Later, the exceptions to the exemption of these bequests were withdrawn.

Margaret A. Shanahan, at the time of her death, was a woman in her middle 70's. During her lifetime, as a Catholic,

she undoubtedly attended several hundred Masses. Assuming that she understood her faith, she believed that the Mass was the central act of worship of her religion. She believed that the Mass was the unbloody sacrifice of the cross and she believed that it was offered, in the first place, to honor and glorify God; Second, to thank Him for his favors; third, to ask His blessings; and, fourth, to propitiate Him for the sins of all mankind. She believed that the fruits of the Mass are received by the person or persons for whom the Mass is offered, all of those who assist at the Mass, the celebrant himself, and all mankind within or without the fold of the church. She understood that the saying of a Mass for the repose of her soul and for the souls of her relatives would not be limited in its benefits to herself alone. She believed that it was an act of public worship and that, like the redemption on the cross, the repetition of the sacrifice on the altar was for the benefit and salvation of all mankind. She knew that the Mass was read daily in all parts of the world—from the deepest recesses of the African jungle to the highest reaches of the Asian plateau, from the frozen wastes of the arctic circle to the tropical climes of South America. She believed that the saying of the Mass from the rising of the sun to the setting thereof was the fulfillment of the prophecy of Malachias, Chapter 1, Verse 11:

"From the rising of the sun, to the going down thereof, my name is great among the Gentiles and in every place there is sacrifice, and there is offered to my name a clean oblation."

She had no near relatives whom she could consider the natural objects of her bounty. Believing all these things, could she not then have had in mind that she was doing a public charity by providing for a great number of Masses, probably to be said in all parts of the world, knowing full well the troubled state of the world. There are decisions that hold that the Mass is a public charity. (In re Cavanaugh's Estate, 126 N. W. Rep., 672.) If the testimony had been more fully directed toward this phase of the Mass, the court would then be warranted in giving more consideration to the question as to whether or not the Mass came within the definition of a public charity as intended by the exemption statute of the Ohio inheritance tax law.

In determining the taxability of a succession under the Ohio inheritance tax law, it would be the court's first duty to determine the nature and character of the tax. The opening paragraph of §5332 GC, provides as follows:

"**The tax is hereby levied upon the succession to any property passing in trust or otherwise to or for the use of a person, institution or corporation.**"

You will note from the above language that it is a tax upon a **succession passing to a person,** an **institution** or a **corporation.** Consequently, there must be a passing over of something of value from the estate to an individual, institution or corporation. The tax is assessed against the person entitled to the thing of value passing over. In the case of **Tax Commission v. Lamprecht** reported in **107 Oh St, 536,** we find the following language:

"The most cursory examination of the Ohio inheritance tax law discloses that it is full of deficiencies, ambiguities, and uncertainties and its imperfections are so glaring, and the difficulties encountered in giving it a special administration are so great, that the Courts and the Tax Commission have been presented with problems of the utmost difficulty; and the decisions heretofore reached by the Courts have not been uniform among the lower Courts nor unanimous in this Court."

Quoting further from the same case at page 538, we find the following language:

"Throughout all the authorities upon this subject, there is found a discussion of the fact that the federal tax is levied against the estate and the right of a decedent to transfer property, the state tax is levied against the **succession** or the **right of a person** to **receive** property from the estate of a decedent."

In the case of **Wonderly v. Tax Commission,** reported in **112 Oh St, 233,** the court states that an inheritance tax is not a tax on property; it is a tax on its succession to others—on the privilege to receive it upon the owner's death, by way of devise, legacy, descent or distribution. Therefore. we conclude that the state inheritance tax is a tax in personam, not in rem, in other words, there must be a person identifiable against whom the tax can be assessed. Undoubtedly, the Court of Appeals, in the unreported decision in the estate of Gerdeman, was influenced by the reasoning set out above. In the estate of Gerdeman, the decedent died testate and his will provided as follows:

"I direct and demand that $10,000 be expended for Masses to be read according to the ritual of the holy Catholic Church for the repose of my soul and that of my wife, Mary Gerdeman, the same to be read as soon as it can be done after my demise and the same to be paid out of my personal estate."

The court held that the amount directed to be expended for Masses did not constitute a taxable succession under §5331 and §5332 GC, and that said amount was a proper deduction in determining the value of the decedent's net estate. The Supreme Court of Ohio, in the case of **In re Estate of Reilly,** reported in **138 Oh St, 145, 20 O. O. 131,** refers to the Gerdeman

case and indicates in the language used at page 150 that if the facts in the Reilly case were similar to those in the Gerdeman case the holding of the court would have been that no tax could be assessed. It will be noted that in the Gerdeman case there is a direction to the executor to expend. It will be noted that in the Shanahan case, that is, this case now under consideration by this court, there is a direction to the executor to expend without specifying any particular priest or any particular parish church. In the Reilly case, the question revolved around a situation where a testator left a specified sum to a trustee with direction to the trustee to pay a fixed amount to the pastor of a specified church. In such a case, you have an identifiable person who will receive the fund. In the Shanahan case, there is no identifiable person who will receive the fund. Commenting upon the direction to expend, the court in the Reilly case distinguishes between a direction to expend and a direction to pay to a specified priest or parish. At page 149, we find the following language:

"It is further argued that if a testator directs his executor to expend money to erect a monument or to have Masses said, no tax will be due. (Tax Commission v. Gerdeman.) And it is asked whether the trusts here created are not in essence the same as a direction to an executor and, if so, why are they taxable? The answer is twofold. First, there is a very real and practical difference between the long term trusts here set up and a direction to an executor. An executorship is terminated in a relatively short time but the trusts here created by the testatrix may continue indefinitely—as long as the payments made by the trustee do not exceed the income from or exhaust the principal of the trust res. The testatrix obviously desired the disbursement of her funds in small amounts over a long period of time.—This continuing and positive accomplishment could not be achieved by the testatrix through the medium of a mere direction to her executor. Second, although a bequest to a trustee and a direction to an executor may have points of similarity, they nevertheless differ in the crucial elements which determine taxability. **This Court has repeatedly held that the incidence of the Ohio inheritance tax is upon the succession, that is, upon the right to receive property from the estate of a decedent.** Considering a mere direction to an executor, where does one find any succession—any passing of property by will —or any right in any particular person to receive property from the decedent's estate? There is merely the authorization to an executor to make an expenditure from the assets in his hands before the division and passing of the property

of the estate. There is, thus, **no succession to any property upon which the tax may fall."**

It will be noted that the language of the court in the above quotation stresses the fact that in a will in which there is a mere direction to the executor to expend that there is no succession to any identifiable or particular person who is to receive the property and against whom the tax can be assessed. During the taking of the testimony in this case, the State Department of Taxation attempted to show that even though there was no identifiable person who was to receive the money for the saying of Masses, that in all probability the fund would be completely distributed to the pastor of St. Ann's Church, Fremont, Ohio. St. Ann's was the parish church of the decedent. In rebuttal, the attorneys for the estate and Mr. Gallagher, as amicus curiae, offered testimony to show that a pastor is limited with reference to Mass matters in the following respects: First, he may say but one Mass per day for a stipend. Second, if he is a pastor, there are about one hundred days in each year on which he may receive no stipend. Third, he may receive only the sum of $1 for a Low Mass or the sum of $2 for a Low Mass set for a particular date, or the sum of $5 for a High Mass. Fourth, he may not personally accept stipends which would obligate him to say Masses which could not be said **in toto within one year.** It is therefore apparent that from the above undisputed testimony there could not be any payment of these Masses to the pastor of St. Ann's Church, who would therefore be the successor and against whom, consequently, the tax could be assessed. Testimony further conclusively shows that if the executrix should choose the pastor of St. Ann's as her agent for the distribution of the money for Masses the pastor would have no personal or financial interest in the fund whatever. It is further noted from the testimony that a stipend is a personal offering made to a priest. The parish church or the church as an institution has no interest whatever in such an offering. It is solely and exclusively the property of the one to whom the offering is made. All of the authorities cited by the Department of Taxation in support of their contention of taxability in this case are citations where the money was left to a particular priest or to the pastor of a particular church. This is true in every citation set out in their brief, except the case of **Lanza v. DiFronzo, 41 O. O. 390, 56 Abs 310,** in which the question of taxability was not in issue.

In conclusion, therefore, the court finds that under the language of the Shanahan will, wherein the executrix is

directed to expend money for Masses without any limitation upon the right of expenditure, there is no taxable succession for the reason that there is no identifiable person against whom the tax may be assessed. It is the opinion of this court that this has been the law of Ohio since the decision in the Gerdeman case decided sometime in the early 1920's by the Court of Appeals of Putnam County and distinguished and approved by the Supreme Court of Ohio, **In re Estate of Reilly, 138 Oh St, 145, 20 O. O. 131.**

The exceptions herein are overruled.